# 13-1705-cv

## United States Court of Appeals

*for the*

## Second Circuit

—————————

SC NOTE ACQUISITIONS, LLC,

*Plaintiff-Appellant,*

— v. —

WELLS FARGO BANK, N.A., MIDLAND LOAN SERVICES, INC.,
LNR PARTNERS, LLC, as Successor by Conversion to LNR Partners, Inc.,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

GREGORY A. CROSS
COLLEEN M. MALLON
VENABLE LLP
*Attorneys for Defendants-Appellees*
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7400

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellees certify that the following are corporate parents, affiliates and/or subsidiaries of said parties, which are publicly held:

1.      Appellee Wells Fargo Bank, N.A.'s parent corporation is Wells Fargo & Company, and Wells Fargo & Company is a publicly held corporation that owns 10% or more of Wells Fargo Bank, N.A.'s stock.  With the exception of Wells Fargo & Company, no other publicly held corporation owns 10% or more of Wells Fargo Bank, N.A.'s stock.

2.      Appellee Midland Loan Services is a division of PNC Bank, National Association.   PNC Bank, National Association is a wholly owned indirect subsidiary of The PNC Financial Services Group, Inc.  With the exception of The PNC Financial Services Group, Inc. no other publicly held corporation owns 10% or more of PNC Bank, National Association's stock.

3.      Appellee LNR Partners, LLC's ultimate parent corporation is Starwood Property Trust, Inc.  Starwood Property Trust, Inc. owns 10% or more of LNR Partners, LLC's stock.  LNR Partners, LLC is also affiliated with SPT Management, LLC and Starwood Capital Group.   There are no publicly-held subsidiaries.

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF THE CASE..............................................................1

STATEMENT OF FACTS ...................................................................5

    A.    The Parties.....................................................................5

    B.    The Trust .......................................................................6

    C.    The Trust Continues As A REMIC – SC Note's
        Allegations Against Defendants Lack Legal Merit..........8

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT ...................................................................................12

    I.    Standard Of Review ......................................................12

    II.    The Contemporaneous Ownership Rule Bars SC Note's
        *Admitted* Purchased Grievance.......................................13

        A.    SC Note's Failure to Appeal the District
            Court's Dismissal Under the Contemporaneous
            Ownership Rule Compels Affirmance.................13

        B.    SC Note Lacks Standing to Sue LNR and Midland
            Under the Contemporaneous Ownership Rule .....14

        C.    SC Note Also Lacks Standing to Sue Wells Fargo
            Under the Contemporaneous Ownership Rule .....17

    III.    The Case Or Controversy Requirement Of Article III Of The
          U.S. Constitution Bars SC Note's REMIC-Based Claims.............19

A.    SC Note Lacks Standing to Sue for a *Potential Future* Revocation of the Trust's Federal Tax Status as a REMIC by the IRS ...............................20

B.    Courts Have Routinely Dismissed Similar Unripe Actions ................................................................22

IV.    SC Note's Arguments For Reversal Of The District Court's Dismissal Based On Article III Of The U.S. Constitution Lack Merit ...................................................................25

A.    SC Note Has Failed Its Burden of Showing Ripeness under Article III ......................................25

B.    SC Note Has Failed Its Burden of Showing Prudential Ripeness ..............................................29

C.    SC Note's Reliance on the <u>Dominion</u> Case is Misplaced .........................................................29

V.    Dismissal Of SC Note's REMIC-Based Claims Is Supported By Several Alternative Grounds In The Record ...........................31

A.    SC Note Lacks Standing to Sue Under the PSA...................31

B.    SC Note May *Not* Demand that the Court Declare Federal Tax Liabilities ...........................................34

C.    SC Note's REMIC-Based Claims Fail as a Matter of Law .................................................................37

VI.    Dismissal Of SC Note's Five Counts Against Wells Fargo As Trustee Was Proper For Additional Reasons ...................................41

CONCLUSION ......................................................43

# TABLE OF AUTHORITIES

## CASES                                                                 Page(s)

Alleco, Inc. v. IBJ Schroder Bank & Trust Co.,
    745 F. Supp. 1467 (D. Minn. 1990) ............................................................. 33

Allen v. Wright,
    468 U.S. 737 (1984)...................................................................................... 19

Am. Ins. Ass'n v. Chu,
    64 N.Y.2d 379 (1985).................................................................................... 20

Am. Savings Bank, FSB v. UBS Fin. Servs., Inc.,
    347 F.3d 436 (2d Cir. 2003) .............................................................. 19, 20, 29

Ashcroft v. Iqbal,
    556 U.S. 662, 681 (2009) .............................................................................. 41

Bank of Am., N.A. v. PCV St. Owner LP,
    Case No. 10-1178 (S.D.N.Y.)........................................................................ 34

Bank of N.Y. v. Battery Park City Auth.,
    251 A.D.2d 211, 675 N.Y.S.2d 860 (N.Y. App. Div. 1998)........................ 32

Bateson v. Magna Oil Corp.,
    414 F.2d 128 (5th Cir. 1969) ........................................................................ 16

Baur v. Veneman,
    352 F.3d 625 (2d Cir. 2003) ......................................................................... 12

Berk v. Tradewell, Inc.,
    No. 01 Civ. 9035, 01 Civ. 10068, 2003 WL 21664679
    (S.D.N.Y. July 16, 2003)............................................................................... 24

Blue True Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,
Inc.,
    369 F.3d 212 (2d Cir. 2004) ............................................................................5

Bob Jones Univ. v. Simon,
        416 U.S. 725 (1974)........................................................................ 35

Brambles USA, Inc. v. Blocker,
        731 F. Supp. 643 (D. Del. 1990) ................................................. 18

Burke v. Quick Lift, Inc.,
        No. 05-CV-3731, 2008 WL 1744532 (E.D.N.Y. April 11, 2008) .............. 43

Center for Reproductive Law and Policy v. Bush,
        304 F.3d 183 (2d Cir. 2002) ........................................................ 12

Chandok v. Klessig,
        632 F.3d 803 (2d Cir. 2011) ........................................................ 13

Chirik v. T.D. Banknorth, N.A.,
        Civil Action No. 06-04866, 2008 WL 186213 (E.D. Pa. Jan. 15, 2008) ..... 37

City of New Orleans v. Smith Barney, Inc.,
        No. Civ. A. 98-1767, Civ. A. 98-1768, 1999 WL 288797 (E.D. La. May 7,
        1999) ......................................................................................... 24

Clinton v. Acequia, Inc.,
        94 F.3d 568 (9th Cir. 1996) ........................................................ 22

Cole v. Cook,
        No. 1:06 CV 1811, 2006 WL 3791680 (N.D. Ohio Dec. 22, 2006) ........... 23

Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,
        502 F.3d 91 (2d Cir. 2007) .......................................................... 19

Daines v. Alcatel, S.A.,
        105 F. Supp. 2d 1153 (E.D. Wash. 2000).............................. 23, 27

Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust,
        95 CIV. 9426, 1996 WL 601705 (S.D.N.Y. Oct. 18, 1996)......................... 15

Dominion Trust Co. Tenn. v. United States,
        786 F. Supp. 1321 (M.D. Tenn. 1991) .......................................... 29, 20, 31

Flast v. Cohen,
        392 U.S. 83 (1968) ........................................................................ 19

Friedman v. Chesapeake & Ohio Ry. Co.,
        261 F. Supp. 728 (S.D.N.Y. 1966) .............................................. 32

Garcia v. Hartford Police Dept.,
        706 F.3d 120, 131 (2d Cir. 2013) .......................................... 13, 14

Goldman v. McMahan, Brafman, Morgan & Co.,
        No. 85 Civ. 2236, 1987 WL 12820 (S.D.N.Y. June 18, 1987) ................... 24

Gottesman v. General Motors Corp.,
        28 F.R.D. 325 (S.D.N.Y. 1961) .................................................15

Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,
        545 U.S. 308 (2005).......................................................... 3

In re Bank of New York Derivative Litig.,
        173 F. Supp. 2d 193 (S.D.N.Y. 2001) .......................................... 17

In re Bank of New York Derivative Litig.,
        320 F.3d 291 (2d Cir. 2003) ....................................... 12, 15, 16, 18

In re Innkeepers USA Trust,
        448 B.R. 131 (Bankr. S.D.N.Y. 2011) ......................................... 32

In re River Hotel Corp.,
        191 B.R. 371 (Bankr. E.D. Tenn. 1995)....................................... 24

In re Sidney B. and Frances K. Golub,
        No. 620 IV, 2006 WL 2947677 (Pa. Comm. Pl. Sept. 24, 2006)................ 42

Int'l Ass'n of Fire Fighters, Loc. 2665 v. City of Clayton,
        320 F.3d 849 (8th Cir. 2003) ................................................. 15

Jackson-Bey v. Hanslmaier,
        115 F.3d 1091 (2d Cir. 1997) ................................................ 19

Jolles Foundation, Inc. v. Moysey,
    250 F.2d 166 (2d Cir. 1957) .................................................. 30, 36

JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,
    412 F. 3d 418 (2d Cir. 2005) ....................................................... 13

Kendall v. Employees Retirement Plan,
    561 F.3d 112 (2d Cir. 2009) .................................................. 19, 28

Kevelighan v. Orlans Associates, P.C.,
    498 Fed. Appx. 469, 2012 WL 3090836 (6th Cir. July 30, 2012) ............... 14

Leventhal v. Haehl,
    No. 88-CV-569, 1989 WL 55972 (N.D.N.Y. May 26, 1989) ............... 16, 17

Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP,
    No. Civ. A. 04-1256-JJF, 2007 WL 129003 (D. Del. Jan. 12, 2007) .......... 15

McCarthy v. Marshall,
    723 F.2d 1034 (1st Cir. 1983)....................................................... 35

Meyer v. Lowry & Co.,
    19 N.Y.S.2d 835 (N.Y. Sup. Ct. 1940)........................................... 33

Nathel v. Siegal,
    592 F. Supp. 2d 452 (S.D.N.Y. 2008) ........................................... 26

Phoenix Home Life Mutual Ins. Co. v. Brown,
    No. 93-CV-0990E(H), 1997 WL 627637 (W.D.N.Y. Oct. 7, 1997)............35

Pierre v. Comm'r,
    133 T.C. 24 (2009) ...................................................................40

RBC Capital Mkt., LLC v. Educ. Loan Trust IV,
    C.A. No. 6297–CS., 2011 WL 6152282 (Del. Ch. Sept. 9, 2011) ......... 33, 34

Reis v. Barley, Snyder, Senft & Cohen, LLC,
    426 Fed. Appx. 79, 2011 WL 477653 (3d Cir. Feb. 11, 2011) .................... 14

Rosner v. Star Gas Partners, L.P.,
    344 Fed. Appx. 642, 2009 WL 2581565 (2d Cir. Aug. 20, 2009) ............... 25

Scanlan v. Kodak Retire. Income Plan,
    678 F. Supp. 2d 110 (W.D.N.Y. 2010) .................................................. 22, 23

Silverstein v. Knief,
    843 F. Supp. 2d 441 (S.D.N.Y. 2012) .......................................................... 16

Steed Fin. LDC v. Nomura Secs. Int'l, Inc.,
    No. Civ. 8058, 2004 WL 2072536 (S.D.N.Y. Sept. 14, 2004) ............. 23, 24

Stephenson v. Brady,
    927 F.2d 596 (Table), 1991 WL 22835 (4th Cir. Feb. 26, 1991) ................ 35

Sterling Federal Bank, F.S.B. v. DLJ Mortg. Capital, Inc.,
    No. 09 C 6904, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) .................... 15

Stern & Co. v. State Loan & Finance Corp.,
    205 F. Supp. 702 (D. Del. 1962) ................................................................ 26

TIAA, et al. v. CMSLP, et al.,
    763 F. Supp. 2d 665 (S.D.N.Y. 2011) ........................................................ 33

Tomasko v. Ira H. Weinstock, P.C.,
    357 Fed. Appx. 472, 2009 WL 4897744 (3d Cir. Dec. 18, 2009)............... 25

Victor v. Riklis,
    No. 91 Civ. 2897, 1992 WL 122911 (S.D.N.Y. May 15, 1992) ................. 32

Wahpeton Professional Services, P.C. v. Kniskern,
    275 F. Supp. 806 (D. N.D. 1967) ............................................................... 36

## RULES

Fed. R. Civ. P. 23.1 ........................................................................... 15, 17

# STATUTES

26 C.F.R. § 301.7701 et seq. ................................................................ 6, 36, 38, 39

26 U.S.C. § 860A et seq. ................................................ 6, 7, 10, 21, 27, 28, 38

26 U.S.C. § 6212 ...................................................................................... 21

26 U.S.C. § 6213 ................................................................................. 21, 28

26 U.S.C. § 7248 ...................................................................................... 35

26 U.S.C. § 7422 ...................................................................................... 21

28 U.S.C. § 1331 ........................................................................................ 3

28 U.S.C. § 1340 ........................................................................................ 3

28 U.S.C. § 2201 ...................................................................................... 35

N.Y. Bus. Corp. Law § 626(b)) ............................................................... 15

N.Y. Gen. Oblig. Law § 13-107 .......................................................... 17, 18

Tax Reform Act of 1986, Pub. L. No. 99-514, § 662(a) ........................... 39

# OTHER AUTHORITY

American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions* (1971) ................................................................................... 33

I.R.S. P.L.R. 9807013 (Feb. 13, 1998) ..................................................... 40

I.R.S. P.L.R. 200035031 (Sept. 5, 2000) .................................................. 40

I.R.S. P.L.R. 200102037 (Jan. 16, 2001) ................................................. 40

Rev. Rul. 99-5 (Feb. 8, 1999) ................................................................... 40

Rev. Rul. 2004-77 (Aug. 2, 2004) ......................................................... 40

Rev. Rul. 2013-14 (June 6, 2013) ......................................................... 40

## STATEMENT OF ISSUES

I.     Did the District Court, in its March 27, 2013 Memorandum and Order, correctly decide that Appellant SC Note Acquisitions, LLC ("**SC Note**") lacked standing under the contemporaneous ownership rule because SC Note admitted that it purchased its interest in the commercial mortgage-backed securities ("**CMBS**") Trust at issue in order to file the instant lawsuit against Appellees Wells Fargo Bank, N.A. ("**Wells Fargo**"), Midland Loan Services, a division of PNC Bank, National Association ("**Midland**"), and LNR Partners, LLC ("**LNR**") (collectively, "**Defendants**") and did not own an interest in the CMBS Trust at the time of the alleged primary wrongdoing by Defendants?

II.     Did the District Court, in its March 27, 2013 Memorandum and Order, correctly decide that SC Note failed to satisfy the case or controversy requirement of Article III of the U.S. Constitution with respect to Counts I – XIV of the Complaint?

## STATEMENT OF THE CASE

It is standard practice in the industry for CMBS trusts to be created as Real Estate Mortgage Investment Conduits ("**REMIC**").  It is also standard practice that foreclosure of the collateral securing the loans in these trusts is done through single member limited liability companies ("**LLC**").  This is precisely the practice of

LNR, the largest Special Servicer in the CMBS industry, and is the subject of the instant appeal.

This lawsuit is not about correcting any alleged wrongs by Defendants or doing what is in the collective best interests of the CMBS Trust[1] or the Certificateholders. ***It is a purchased grievance***. ***SC Note admitted to the District Court that it purchased a nominal amount of a single Certificate in the CMBS Trust for the singular purpose of filing this lawsuit against Defendants***. SC Note has suffered no injury or harm. SC Note's hypothetical claims are predicated upon a ***potential future revocation*** of the CMBS Trust's federal tax status as a REMIC. The Internal Revenue Service ("**IRS**") has not challenged the Trust's REMIC status, has conducted no audit of the Trust, and no tax has been imposed. SC Note's purchased claims are simply not ripe.

This appeal is from an order of dismissal granted by the Honorable Joseph F. Bianco of the United States District Court for the Eastern District of New York ("**District Court**" or "**Judge Bianco**").

On January 30, 2012, SC Note filed this action in the Supreme Court of the State of New York, Suffolk County. (A 16-17.) On March 1, 2012, Defendants removed the action to federal court because it is within the federal court's original jurisdiction as a civil action "arising under the . . . laws . . . of the United States."

---

[1]   The term "CMBS Trust" is defined *infra*, and it is referred to herein interchangeably as "CMBS Trust" and "Trust."

28 U.S.C. § 1331.  (A 9-14.)  Specifically, SC Note's claims turn on substantial

questions of federal tax law.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g

& Mfg., 545 U.S. 308, 312 (2005) (citing 28 U.S.C. § 1331).  Accord 28 U.S.C. §

1340.  In the Complaint, SC Note alleges fifteen counts, fourteen of which (Counts

I-XIV) are the subject of the instant appeal.[2]  (A 27-39.)[3]

These fourteen counts turn on whether LNR's actions resulted in the loss of

the Trust's tax status as a REMIC.   (SC Note's Appeal Brief "**Br**." at 1.)

Specifically, SC Note alleges that because of actions undertaken by LNR in 2009

which caused the Trust to own an interest in a special purpose entity ("**SPE**"), the

Trust ***may*** lose its classification as a REMIC under the Internal Revenue Code of

1986, as amended (the "**Tax Code**"), and ***may*** be subject to a 100% tax.  (A 20-21,

Compl. ¶¶ 16-24.)   However, as of the date of the filing of this brief – roughly

eight years after the Trust was created and four years after the conduct complained

of by SC Note – ***the Trust remains a REMIC, the IRS has not challenged the***

***Trust's REMIC status, and the Trust has suffered no adverse tax consequences.***

On April 2, 2012, Defendants moved to dismiss the Complaint pursuant to

Rule 12(b)(6), arguing, *inter alia*, that SC Note lacked standing to sue under

Article III of the U.S. Constitution and the contemporaneous ownership rule.  (A

---

[2]  The District Court also dismissed Count XV, but SC Note has not appealed the dismissal of
that count.  (Br. at 2.)
[3]   References to the Joint Appendix shall be cited as ("**A** __".).  References to the Special
Appendix shall be cited as ("**SPA** __".).

50-51; Dkt. 26.)  The District Court held oral argument on July 17, 2012.  (A 6.) (A copy of the transcript from the oral argument is located at SPA 1-34.)  In a Memorandum and Order dated March 27, 2013, the District Court granted Defendants' Motion to Dismiss, dismissing SC Note's Complaint with prejudice. (SPA 35-49.)  The District Court dismissed on two independent grounds.  ***First***, the District Court concluded that SC Note had not demonstrated that its claims are justiciable under Article III of the U.S. Constitution because the IRS has not actually determined the Trust's tax status as a REMIC has been jeopardized, and therefore any injury suffered by SC Note is purely hypothetical.  (SPA 39-42.) ***Second***, the District Court concluded that, because SC Note did not own any interest in the Trust at the time of the primary alleged wrongdoing and admitted at oral argument that it purchased its interest in the Trust to bring this lawsuit, SC Note did not have standing based on the contemporaneous ownership rule.  (SPA 42-45.)

SC Note filed its notice of appeal from the final judgment on April 26, 2013. (SPA 50.)  SC Note only appeals Judge Bianco's first ground of dismissal under the case or controversy requirement of Article III of the U.S. Constitution.  (Br. at 2.)  ***SC Note did not appeal Judge Bianco's second ground of dismissal under the contemporaneous ownership rule.***  (See id.)[4]

---

[4]  SC Note also did not address the contemporaneous ownership rule in its opening brief.

## STATEMENT OF FACTS

### A.    <u>The Parties</u>

SC Note is a shell company that was formed as a LLC on October 26, 2011. (A 95-105.)[5]    Thereafter, SC Note purchased a nominal amount of one class of Certificates, Class A-M, in the commercial mortgage-backed securitization trust called "JP Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-CIBC13" (the "**Trust**" or "**CMBS Trust**"), and immediately filed this lawsuit against Defendants on January 30, 2012. (A 17-41.)  The owner of SC Note is the sister of the principal sponsor of Philips South Beach, LLC (the "**Borrower**"), the Borrower of one of the loans – the Shore Club Loan discussed *infra* – that until recently was part of the Trust. (SPA 37; A 20-21, Compl. ¶ 20).

*As pled in the Complaint, the alleged primary improper conduct by the Defendants occurred in 2009, two years before SC Note was created and purchased its interest in the Trust*.  (A 21, 25, Compl. ¶¶ 22, 38.)   At oral argument, counsel for SC Note admitted that this lawsuit is a **purchased grievance**:

---

[5]   Certain documents that were referenced in the Complaint, as well as certain public records, were incorporated into the parties' Motion to Dismiss papers and are part of the record.  The District Court properly considered these materials.  See Blue True Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

The Court:

> "*On the contemporaneous ownership doctrine, I don't think you dispute the fact that essentially what your client did was purchase this interest for purposes of the lawsuit. Isn't that pretty much* … "

SC Note's Counsel:

> "*That's correct*."

(SPA 19.)[6]

As SC Note alleges in the Complaint and consistent with the terms of the PSA, Wells Fargo is the Trustee of the Trust, Midland is the Master Servicer for the Trust, and LNR is the Special Servicer for the Trust. (See A 18, 31, Compl. ¶¶ 6, 8, 9, 83; A 205, 234, 238, PSA at 66, 95, 99.) The Master Servicer services the loans unless and until they are transferred to special servicing. Loans are transferred to special servicing due to certain specified events, including but not limited to monetary default and imminent default.

### B.    The Trust

The Trust is a pool of loans classified as a REMIC for federal tax purposes. (A 19, Compl. ¶ 13.) Congress delegated regulatory authority over REMICs to the IRS of the United States Department of the Treasury, see 26 U.S.C. § 860A et seq. and 26 C.F.R. § 301.7701 et seq., and the IRS is ultimately responsible for

---

[6]  This lawsuit was originally filed by SC Note to gain leverage for the Borrower in a separate foreclosure lawsuit. This appeal is a continuation of SC Note's purchased grievance.

determining whether a REMIC is properly classified under the provisions of the Tax Code, see 26 U.S.C. § 860D.

The Trust is listed as a REMIC in the IRS's Publication 938 titled "Real Estate Mortgage Investment Conduits (REMICs) Reporting Information." (A 115.)[7] The tax classification of the Trust has never been revoked, the IRS has never conducted any type of investigation or audit, and no 100% tax on prohibited transactions has been imposed.

The Trust, beginning as early as 2005, issued roughly twenty-six (26) different Classes of Certificates representing beneficial ownership interests in it. (A 63.) The aggregate principal amount of the Certificates issued by the Trust is $2,720,563,694. (A 64.) SC Note alleges that it is the "owner and holder of a Class A-M Certificate of the Trust." (A 19, Compl. ¶ 10.) *SC Note concedes that it does not own 25% of the Class A-M Certificate*.[8] The aggregate principal amount of Class A-M Certificates issued by the Trust is $272,056,000. (A 63.)

The Trust is administered pursuant to an agreement called a Pooling and Servicing Agreement ("**PSA**") dated November 29, 2005. (A 18, 55.) The respective duties of Wells Fargo (as Trustee), Midland (as Master Servicer), and LNR (as Special Servicer) are set forth in the PSA. Also included in the PSA is

---

[7]  The Trust is identified in IRS Publ. 938 at 205 (A 115) as "JP Morgan Comm Mortgage Sec Corp P/T Crt Series 2005-CIBC13 Upper."
[8]   In the lower court, SC Note argued that it was excused from complying with the 25% requirement.

Section 11.03(c) titled "Limitation on Rights of Certificateholders," which is a no-action clause that limits the rights of Certificateholders from bringing a lawsuit unless certain requirements are satisfied, including but not limited to, representing at least 25% in interest of a Class of Certificate. (A 88.)  Section 11.03(c) of the PSA also makes clear that a Certificateholder, like SC Note, has no right to seek or obtain priority over any other Certificateholder or to enforce any right in the PSA except for the equal, ratable and common benefit of *all* Certificateholders:

> It is understood and intended, and expressly covenanted by each Certificateholder with every other Certificateholder and the Trustee, that no one or more Holders of Certificates shall have any right in any manner whatsoever by virtue of any provision of this Agreement . . . to enforce any right under this Agreement, except in an manner herein provided and for the equal, ratable and common benefit of all Certificateholders.

(Id.)

### C.    The Trust Continues As A REMIC – SC Note's Allegations Against Defendants Lack Legal Merit

It is standard practice in the CMBS industry that foreclosure of the collateral securing the loans in CMBS trusts is done through single member LLCs.  This is and has been the practice of LNR and other special servicers in the industry.  In the Complaint, SC Note focuses primarily on the Shore Club Loan and the circumstances surrounding LNR's foreclosure of the collateral that secures that loan, alleging that the means by which such foreclosure was achieved by LNR is

demonstrative of how the Trust allegedly lost its REMIC status.  (A 20, Compl. ¶¶ 17-22.)  SC Note's allegations lack legal merit.

On or about November 8, 2005, the original lender made a loan to the Borrower in the original principal amount of $126,500,000.00 (the "**Shore Club Loan**"), for the purpose of, among other things, refinancing the Shore Club Hotel located in Miami, Florida.  (A 20-21, Compl. ¶¶ 20-21.)  The indebtedness under this loan is evidenced by two promissory notes, Note A and Note B (the "**Notes**"), made by the Borrower in the original principal amounts of $115,000,000.00 and $11,500,000.00 respectively.  (Id.)  On or about November 29, 2005, the original lender assigned its right, title, and interest in, among other things, the Notes to Wells Fargo, as Trustee for the Trust.  (A 18, Compl. ¶ 6.)

The Shore Club Loan was transferred to special servicing, and on September 1, 2009, the Shore Club Loan went into monetary default.  (A 21, Compl. ¶ 22)  On or about September 15, 2009, an SPE titled JPMCC 2005-CIBC13 Collins Lodging, LLC (the "**JPMCC SPE**") was formed by LNR in its capacity as Special Servicer for the benefit of the Trust.  (A 25, Compl. ¶ 38.)  ***The sole member of JPMCC SPE, like the other SPEs, is the Trust for the benefit of the Certificateholders.***  (A 20-21, Compl. ¶¶ 18, 22.)  In November 2010, JPMCC

SPE filed a foreclosure action[9] involving the Shore Club Loan against the Borrower and ultimately obtained a default judgment in May 2013. Thereafter, the Borrower redeemed the Shore Club Hotel for the full amount that was due, more than $167 million, during the public foreclosure sale.

SC Note's REMIC-based claims rest on the theory that by creating single member SPEs, like JPMCC SPE, and assigning to them documents pertaining to the loans owned by the Trust to facilitate the realization of the Trust controlled loans, LNR improperly caused the Trust to obtain a membership interest in the SPEs. (A 20-22, Compl. ¶¶ 16-24.) SC Note alleges that the Trust lost its REMIC status because such an interest is not a "qualified mortgage" or a "permitted investment" as those terms are defined by 26 U.S.C. § 860G of the Tax Code. (Id.)

As a matter of federal tax law, SC Note's allegations are without merit. The assignments by LNR to the SPEs, including to JPMCC SPE, had no effect on the tax status of the Trust as a REMIC. Using a single owner SPE, like the JPMCC SPE created by LNR, to hold a mortgage loan has no effect as a matter of federal tax law on the tax status of the Trust. See infra at 37.

---

[9] See A 106-111, Docket Sheet for JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips South Beach, LLC, Case No. 10-61128 CA 06 (11th Judicial Circuit Fla.). In the foreclosure action, the Borrower asserted frivolous counterclaims against Wells Fargo, Midland and LNR that lacked any merit. While the foreclosure action was pending, the Borrower instituted other actions, including the instant one and Philips South Beach, LLC v. NYLIM, Wells Fargo, Midland, LNR, et al., Index No. 652995/11 (N.Y. Sup.), against Wells Fargo, Midland, and LNR as ploys to gain perceived leverage in the workout of the Shore Club Loan.

## SUMMARY OF ARGUMENT

I.     SC Note failed to appeal or address the District Court's ground for dismissal under the contemporaneous ownership rule. SC Note's failure to address this ground constitutes a waiver, requiring affirmance of the District Court's dismissal. The contemporaneous ownership rule serves as an absolute bar to SC Note's purchased grievance. SC Note did not own an interest in the Trust at the time of Defendants' alleged primary wrongdoing and ***admitted to the District Court that it purchased its interest in the Trust to file this lawsuit.***

II.    SC Note lacks standing under Article III of the U.S. Constitution because its REMIC-based claims are predicated upon a ***potential future revocation*** of the Trust's federal tax status as a REMIC. The IRS has not challenged the Trust's REMIC status, and no tax has been imposed. SC Note's alleged injury is purely hypothetical. SC Note has suffered no injury or harm.

III.   SC Note's rights as a Certificateholder are governed by the terms of the PSA. Section 11.03 of the PSA explicitly prohibits investors, like SC Note, from filing any action unless they have the support of 25% of a Class of Certificates. Here, SC Note does not represent 25% of any Class of Certificates, and in fact does not have the support of a single other investor. Because SC Note has not (and cannot) satisfy the 25% requirement of the PSA's no-action clause, its claims are barred.

IV.    SC Note improperly seeks declarations on the Trust's federal tax classification and federal tax liabilities.  The federal Declaratory Judgment Act prohibits courts from making such declarations.

V.    SC Note's REMIC-based claims lack legal merit.  The Treasury Regulations promulgated under Section 7701 of the Tax Code establish that the separate existence of an LLC with a single member that has not elected to be treated otherwise is disregarded for federal tax purposes.  Here, the Trust is the sole member of an SPE for which no such election has been made.  Accordingly, for federal tax purposes, the SPE has no effect on the Trust's status as a REMIC because the SPE is disregarded and the Trust is treated as directly owning the assets of the SPE.

## ARGUMENT

## I.    Standard Of Review

Dismissal for lack of standing under the contemporaneous ownership rule is reviewed *de novo*.  See In re Bank of New York Derivative Litig., 320 F.3d 291, 297 (2d Cir. 2003).  Dismissal for failure to satisfy the case or controversy requirement of Article III of the U.S. Constitution is reviewed *de novo*.  Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003); Center for Reproductive Law and Policy v. Bush, 304 F.3d 183, 189 (2d Cir. 2002).  This Court may also affirm on

any ground from which there is support in the record.  <u>Chandok v. Klessig</u>, 632

F.3d 803, 813 (2d Cir. 2011).

## II.    The Contemporaneous Ownership Rule Bars SC Note's *Admitted Purchased Grievance*

### A.    SC Note's Failure to Appeal the District Court's Dismissal Under the Contemporaneous Ownership Rule Compels Affirmance

The District Court dismissed SC Note's Complaint because it concluded that

under the contemporaneous ownership rule SC Note did not have standing to bring

this derivative action: "***because plaintiff did not own shares in the Trust at the***

***time of the primary alleged wrongdoing, plaintiff does not have standing to bring***

***this derivative action.***"  (SPA 44.) (emphasis added).  SC Note failed to appeal or

address this ground for dismissal.  "[A]rguments not made in an appellant's

opening brief are waived even if the appellant pursued those arguments in the

district court or raised them in a reply brief."  <u>JP Morgan Chase Bank v. Altos</u>

<u>Hornos de Mexico, S.A. de C.V.</u>, 412 F. 3d 418, 428 (2d Cir. 2005); <u>see also</u>

<u>Garcia v. Hartford Police Dept.</u>, 706 F.3d 120, 131 (2d Cir. 2013) (citing <u>JP</u>

<u>Morgan</u>).

In <u>Garcia</u>, the Second Circuit affirmed the lower court's grant of summary

judgment because the appellant failed to make any argument in his opening brief

with respect to the district court's alternative ground:  "[appellant] did not raise the

issue … in his opening brief and has thus forfeited any objection to the district

6892005                                    13

court's alternative ground." Id. at 130-31.  Other courts have reached the same conclusion.  See, e.g., Kevelighan v. Orlans Assoc., P.C., 498 Fed. Appx. 469, 475, 2012 WL 3090836, at *5 (6th Cir. July 30, 2012) (explaining that plaintiffs only addressed one of four grounds by the district court for dismissal on summary judgment, and concluding that their failure to address the other three grounds resulted in a waiver of any challenge to those alternative grounds, and thus required affirmance of the district court's ruling.); Reis v. Barley, Snyder, Senft & Cohen, LLC, 426 Fed. Appx. 79, 83, 2011 WL 477653, at *4 (3d Cir. Feb. 11, 2011) (affirming dismissal of claims where plaintiffs "acknowledged but did not address in their initial brief on appeal" the district court's alternative grounds for dismissal; plaintiffs waived any objection to them by failing to address them in their opening brief).

Similarly, here, this Court should affirm the District Court's dismissal based on the contemporaneous ownership rule because SC Note failed to appeal or make any argument in its opening brief with respect to this ground.

B.    SC Note Lacks Standing to Sue LNR and Midland Under the Contemporaneous Ownership Rule

Notwithstanding SC Note's failure to address this issue on appeal, the contemporaneous ownership rule bars SC Note's purchased grievance against LNR and Midland.

Federal law and New York law hold that for a plaintiff to have standing to bring a derivative action, "a plaintiff must have owned stock in the company at the time of the alleged wrongdoing." In re Bank of New York, 320 F.3d at 296 (citing Fed. R. Civ. P. 23.1 & N.Y. Bus. Corp. Law § 626(b)).[10]  This is a derivative action, for which courts have applied the contemporaneous ownership rule and Fed. R. Civ. P. 23.1.  See e.g., Int'l Ass'n of Fire Fighters, Loc. 2665 v. City of Clayton, 320 F.3d 849, 851 (8th Cir. 2003); Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust, 95 CIV. 9426, 1996 WL 601705, at *2 (S.D.N.Y. Oct. 18, 1996).[11]  The District Court correctly ruled that this action can only be brought as a derivative action.  (SPA 44.)  Section 11.03(c) of the PSA makes this clear,[12] as does the decision in Sterling Federal Bank, F.S.B. v. DLJ Mortg. Capital, Inc., No. 09 C 6904, 2010 WL 3324705, at *6 (N.D. Ill. Aug. 20, 2010) which held that Rule 23.1 applies because a certificateholder's claim in a CMBS Trust is predicated on duties owed to all certificateholders.

---

[10]  Gottesman v. General Motors Corp., 28 F.R.D. 325, 326 (S.D.N.Y. 1961) clarifies that Rule 23.1 applies to actions removed to federal court based on federal questions, as well as suits based on diversity of citizenship.  Further, SC Note must satisfy the contemporaneous ownership rule because New York Business Corporation Law § 626(b) also requires a plaintiff to satisfy the rule.  See In re Bank of New York, 320 F.3d at 297.

[11]  Accord Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP, No. Civ. A. 04-1256-JJF, 2007 WL 129003, at *3 (D. Del. Jan. 12, 2007) (holding that plaintiff lacked standing as third-party beneficiary under indenture and as creditor under contemporaneous ownership rules).

[12]  In accordance with section 11.03 of the PSA, Certificateholders are not permitted to enforce rights in the PSA unless it is "for the equal, ratable, and common benefit of all Certificateholders."  (A 88.)

The "main purpose of this so-called 'contemporaneous ownership' rule is to 'prevent . . . courts from being used to litigate ***purchased grievances***.'" In re Bank of New York, 320 F.3d at 297 (internal quotation omitted) (emphasis added). Therefore, "a stranger to the corporation who buys stock with knowledge of the alleged wrongs may not maintain a derivative action even if the wrongs complained of are continuing wrongs. . . ."[13] Leventhal v. Haehl, No. 88-CV-569, 1989 WL 55972, at *2 (N.D.N.Y. May 26, 1989) (quoting Bateson v. Magna Oil Corp., 414 F.2d 128, 131 (5th Cir. 1969)).  The rule serves dual purposes:  to "prevent potential derivative plaintiffs from buying a lawsuit by purchasing stock" and to "insure that derivative actions are brought by shareholders who have actually suffered injury and have an interest in the outcome of the case." Silverstein v. Knief, 843 F. Supp. 2d 441, 445 (S.D.N.Y. 2012) (citation omitted). These principles apply here.

The District Court correctly observed that SC Note was formed on October 26, 2011 and bought its interest in the Trust sometime after that date.  (SPA 44.)  It then noted, however, that "according to the complaint, the primary conduct for which this lawsuit was brought occurred [in 2009] over two years before plaintiff's formation."  (Id.)  Judge Bianco explained that, even if some of the alleged wrongdoing continued after SC Note's purchase, SC Note's claims were barred

---

[13]  The Complaint is devoid of any specific allegations as to any continuing wrong after SC Note purchased its Certificate.

because **SC Note admitted that it purchased its interest in the Trust for the singular purpose of bringing this lawsuit.**  (SPA 37, 45.)  For these reasons, SC Note's claims against LNR and Midland were properly dismissed by the District Court.  See In re Bank of New York Derivative Litig., 173 F. Supp. 2d 193, 197-98 (S.D.N.Y. 2001) (granting motion to dismiss on contemporaneous ownership doctrine when the "circumstances strongly suggest that the [plaintiffs] purchase their shares to 'buy' a lawsuit").[14]

      C.    SC Note Also Lacks Standing to Sue Wells Fargo Under the Contemporaneous Ownership Rule

It is undisputed that SC Note purchased its Certificate in the Trust with a preexisting plan to file this lawsuit against the Defendants.  Accordingly, the contemporaneous ownership rule also bars SC Note's claims against Wells Fargo as Trustee, notwithstanding New York General Obligations Law § 13-107(1).[15]

New York General Obligations Law § 13-107(1) provides that pre-existing claims against a trustee are transferred along with the transfer of a bond.  Arguably, therefore, this statute might provide an escape valve for claims against trustees filed by Certificateholders who fail the literal requirement of the contemporaneous ownership rule by not actually owning the Certificates at the

---

[14]  See also Leventhal, 1989 WL 55972 at *2 (finding that plaintiff lacked standing under Rule 23.1 because he purchased his stock two weeks after the announcement of an investigation into wrongdoing).

[15]  By its very terms, this statute does **not** apply to claims against the servicers, LNR and Midland.

time of the alleged wrongdoing but who are not trying to purchase a grievance. See In re Bank of New York, 320 F.3d at 298.  That is not the case here.  The sister of the Borrower of the Shore Club Loan formed a shell LLC called SC Note and in less than three (3) months affirmatively sought out and purchased a nominal interest in the Trust solely to file this purchased lawsuit, which unsurprisingly is not in the collective best interests of the other Certificateholders.  When questioned by the District Court about its motive, SC Note candidly admitted to buying this lawsuit.  (SPA 19.)  See Brambles USA, Inc. v. Blocker, 731 F. Supp. 643, 652 (D. Del. 1990) ("As a matter of policy, one who buys shares with knowledge of a purported wrongdoing should not be permitted to bring suit to challenge that wrongdoing.").

The District Court correctly held that this lawsuit (i.e., SC Note's claims against all of the Defendants (including Wells Fargo)), was a derivative one that was barred by the contemporaneous ownership rule:  "***because plaintiff did not own shares in the Trust at the time of the primary alleged wrongdoing, plaintiff does not have standing to bring this derivative action.***"  (SPA 44.) (emphasis added).  Because SC Note has admitted to its improper motive in buying this lawsuit, SC Note's purchased claims against Wells Fargo as Trustee are barred by the contemporaneous ownership rule and New York General Obligations Law § 13-107(1) is no exception to that rule here.

6892005                                      18

**III.    The Case Or Controversy Requirement Of Article III Of The U.S. Constitution Bars SC Note's REMIC-Based Claims**

The District Court also correctly dismissed SC Note's claims because SC Note did not satisfy the case or controversy requirement of Article III of the U.S. Constitution.  (SPA 42.)  Article III restricts the judicial power of federal courts to "cases" and "controversies."  Flast v. Cohen, 392 U.S. 83, 94 (1968).  Justiciability under Article III encompasses several different doctrines, including standing and ripeness.  Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 101 n.6 (2d Cir. 2007) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)).

SC Note has the burden of alleging facts to show standing and ripeness.  See Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1095 (2d Cir. 1997).  For constitutional standing, SC Note must "have suffered some injury-in-fact." Kendall v. Employees Ret. Plan, 561 F.3d 112, 118 (2d Cir. 2009).  The asserted injury "must be concrete and particularized as well as actual or imminent, ***not conjectural*** or hypothetical."  Kendall, 561 F.3d at 118 (emphasis added).  For prudential ripeness, the court considers:  "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." Am. Savings Bank, FSB v. UBS Fin. Servs., Inc., 347 F.3d

436, 440 (2d Cir. 2003).[16]  Fitness is "concerned with whether the issues sought to be adjudicated are ***contingent on future events*** or ***may never occur***."  Id. (emphasis added).  Hardship considers "whether the challenged action creates a direct and immediate dilemma for the parties."  Id.

### A.    SC Note Lacks Standing to Sue for a ***Potential Future*** Revocation of the Trust's Federal Tax Status as a REMIC by the IRS

The District Court analyzed SC Note's claims under both the standing and ripeness doctrines and correctly held that SC Note "has not satisfied its burden of demonstrating that it has satisfied the case or controversy requirement of Article III." (SPA 40.)  As Judge Bianco observed, SC Note does not dispute that the Trust's tax status as a REMIC has not been revoked or that no tax penalty has been imposed upon it.   (SPA 36, 40.)  Indeed, the Trust continues to be a REMIC and its classification remains unchanged by the IRS.   (Id.; A 115.)   Rather, the *gravamen* of SC Note's REMIC-based claims (Counts I-XIV) is its conjecture that the IRS ***may someday in the future*** revoke the Trust's status as a REMIC.  Even if the Trust's REMIC status were theoretically endangered (which it is not), SC Note has not suffered a dime of loss.  Multiple speculative contingencies would have to occur before this happened, none of which have any ground in current law.

---

[16]   Accord Am. Ins. Ass'n v. Chu, 64 N.Y.2d 379, 385 (1985) (dismissing complaint as premature when the "issue presented for adjudication involves a future event beyond control of the parties which may never occur").

Before SC Note's action could ever ripen into one a court could decide, the IRS would first have to conduct an audit of the Trust to determine whether the Trust cease[d] to be a REMIC during the taxable year.  Even if the IRS made such a determination, disqualification as a REMIC is *not* automatic.  The Tax Code provides that ***if "the Secretary determines that such cessation was inadvertent*,"** and if the entity agrees to make sure that "steps are taken so that such entity is once more a REMIC," the entity may be treated as a REMIC as "the Secretary determines to be appropriate."  26 U.S.C. § 860D(b)(2)(B)(ii)-(iv).

The Trust would also have a right to appeal any adverse determination, by first exhausting its administrative remedies with the IRS.  If the IRS appeal was unsuccessful, after receiving a notice of tax deficiency, the Trust could either petition the United States Tax Court, or pay the tax and file suit for a refund in federal court.  <u>See</u> 26 U.S.C. §§ 6212, 6213, 7422.  The reviewing court would have to affirm the IRS's determination before actual liability existed and only then would the Trust actually start paying taxes.  Until that time, however, there is no injury to any Certificateholder, including SC Note.

The Complaint does ***not*** allege that ***any*** of these events has occurred.  Judge Bianco observed:

> If the Court were to allow this case to proceed prior to an IRS determination and plaintiff was victorious in this lawsuit, but the IRS later determined that defendants did not endanger the REMIC status, plaintiff would receive a windfall. The Court cannot decide a case

> with a hypothetical injury that may never occur. If the IRS and the
> Tax Court ever determine that the Trust may no longer be classified as
> a REMIC, plaintiff would have standing under Article III. However,
> until that time, plaintiff has not suffered an injury. Moreover, plaintiff
> will suffer no harm by waiting for its claims to become ripe.

(SPA 42.)  Accordingly, the District Court properly ruled that SC Note's purported

injury is hypothetical and thus it "has neither satisfied Article III standing, nor

demonstrated that its claim is ripe, when an injury is 'contingent [on a] future

event[ ] that may not occur as anticipated, or indeed may not occur at all.'" (SPA

41 (citing <u>Clinton v. Acequia, Inc.</u>, 94 F.3d 568, 572 (9th Cir. 1996)).)

> B.    <u>Courts Have Routinely Dismissed Similar Unripe Actions</u>

In reaching its decision, the District Court relied on several analogous

decisions in which other courts have dismissed similar unripe actions.  In <u>Scanlan</u>

<u>v. Kodak Retire. Income Plan</u>, 678 F. Supp. 2d 110, 113 (W.D.N.Y. 2010), the

plaintiff argued that defendant's business transaction and refusal to reclassify

plaintiff's termination would result in the revocation of the retirement plan's

federal tax status.  Plaintiff asserted that "if the Internal Revenue Service changes

the Plan's present tax-qualified status," such revocation would cause damages in

the form of additional taxes.  <u>Id.</u>  In dismissing plaintiff's complaint, the court

explained:

> [Plaintiff's] claim would require not one, but several hypothetical
> events to occur before it could be adjudicated, including an IRS audit,
> determination by the IRS to revoke tax-qualified status, the absence of
> a successful appeal of the determination by defendants, imposition of

additional taxes . .  by the IRS based upon the revocation, and payment of those additional taxes . . . .

Id. at 114.   The court concluded that plaintiff's "allegations of potential tax consequences fail to raise a right to relief above the speculative level."  Id. (citation omitted).

The District Court also relied on Cole v. Cook, No. 1:06 CV 1811, 2006 WL 3791680, at *2 (N.D. Ohio Dec. 22, 2006), where plaintiff shareholders brought a claim for contractual indemnification for "any negative tax consequences" stemming from the alleged loss of federal tax status of an S Chapter corporation. Even though the IRS was actually reviewing the corporation's tax status, the court dismissed the case as premature, pointing out that there was "no allegation that the IRS is seeking back taxes" and the "IRS has issued no adverse ruling against Plaintiffs." Id. at *3.  It concluded: "Plaintiffs' indemnification claim is premature and any decision I issue in this case would be advisory only." Id.[17]

Like SC Note, the plaintiff in Steed Fin. LDC v. Nomura Secs. Int'l, Inc., No. Civ. 8058, 2004 WL 2072536, at *1, 3 (S.D.N.Y. Sept. 14, 2004) was an investor in mortgage-backed securities in a REMIC trust that brought claims based on its interpretation of the Tax Code, arguing that the trust did not qualify for

---

[17]  The District Court also cited to Daines v. Alcatel, S.A., 105 F. Supp. 2d 1153, 1156 (E.D. Wash. 2000), where the court found that the plaintiff's claim that defendants advance the plaintiff money to cover potential tax liability was unripe when it was "merely speculative" that the plaintiff would be forced to pay the taxes should the IRS determine the plaintiff had tax liability.

federal tax status as a REMIC.  The court rejected the plaintiff's claim for damages, noting that "plaintiff's REMIC claim would still fail because of plaintiff's failure to establish that it has been damaged in any way as a result of the Trust's tax classification."  Id. at *9 n.17.  ***The court concluded that "[p]laintiff has not shown that it suffered any injury in connection with the REMIC classification of the Trust, which has not been disturbed by the IRS . . ."*** Id.

Other courts that have considered claims similar to SC Note's claims have reached the same conclusion.  See, e.g., Berk v. Tradewell, Inc., No. 01 Civ. 9035, 01 Civ. 10068, 2003 WL 21664679, at *6 (S.D.N.Y. July 16, 2003) (dismissing breach of contract and fiduciary duty claims because plaintiff's "alleged injuries were merely hypothetical at this point; they depend on a decision by the appropriate tax-collecting authorities which has not yet been made"); Goldman v. McMahan, Brafman, Morgan & Co., No. 85 Civ. 2236, 1987 WL 12820, at *21 (S.D.N.Y. June 18, 1987) (dismissing as premature plaintiffs' declaratory judgment claim which sought indemnification for additional taxes which plaintiffs *may* have had to pay in the future); City of New Orleans v. Smith Barney, Inc., No. Civ. A. 98-1767, Civ. A. 98-1768, 1999 WL 288797, at *8 (E.D. La. May 7, 1999) (holding that, when the "core of plaintiffs' request for relief is premised on the IRS making a final determination that the [tax-exempt] bonds are subject to taxation" due to defendant's acts, the claims "are not ripe at this time"); In re River Hotel

Corp., 191 B.R. 371, 373 (Bankr. E.D. Tenn. 1995) (determination of tax consequences of sale of debtor's assets was not ripe for adjudication, as no controversy currently existed between IRS and debtor concerning the debtor's taxes or tax liability).

Here, the REMIC classification of the Trust has not been disturbed by the IRS, and the IRS has not even initiated a proceeding to revoke the exemption. SC Note's REMIC-based claims are entirely contingent on future events that may never occur, and thus Counts I-XIV were properly dismissed by the District Court.[18]

## IV.    SC Note's Arguments For Reversal Of The District Court's Dismissal Based On Article III Of The U.S. Constitution Lack Merit

### A.    SC Note Has Failed Its Burden of Showing Ripeness Under Article III

SC Note sets up a strawman argument, contending that the District Court erred because it "presumed that action by the IRS is necessary for the imposition of tax liability." (Br. at 6.) SC Note contorts the District Court's holding. The issue before Judge Bianco was whether SC Note's REMIC-based claims presented a

---

[18] In its brief, SC Note reiterates an argument that it made, **for the first time,** in oral argument before the District Court – that the purely hypothetical tax liability, which has not been assessed by the IRS, purportedly affects the market value of SC Note's investment. (Br. at 11.) This allegation is not alleged in SC Note's Complaint. SC Note cannot seek review of an order of dismissal based on allegations not pled in its Complaint. See Rosner v. Star Gas Partners, L.P., 344 Fed. Appx. 642, 644, 2009 WL 2581565, at *1 n.2 (2d Cir. Aug. 20, 2009); see also Tomasko v. Ira H. Weinstock, P.C., 357 Fed. Appx. 472, 479, 2009 WL 4897744, at *7 (3d Cir. Dec. 18, 2009) (holding that an argument raised for the first time at oral argument before the district court is waived on appeal).

justiciable controversy, which required SC Note to demonstrate first that the
Trust's REMIC status had been lost, and second, if lost, to demonstrate the amount
of tax liability incurred by the Trust.  The District Court correctly observed:

> In Counts I-XIV of the complaint, plaintiff alleges that defendants'
> actions have caused the Trust to lose its REMIC status.  However, this
> injury is currently 'hypothetical.'  *Lujan*, 504 U.S. at 560.  The IRS
> has not determined that the Trust is no longer entitled to its REMIC
> status, and plaintiff has not alleged that the Trust has had any tax
> liability imposed upon it.

(SPA 40.)

Tellingly, SC Note abandons the two primary cases upon which it relied in
the court below,[19] and fails to cite any case on injury-in-fact ripeness under Article
III.  Rather, SC Note resorts to four criminal tax evasion cases involving whether
the Due Process Clause of the U.S. Constitution required the government to obtain
an administrative determination of a tax deficiency before proceeding with a
criminal prosecution for tax evasion.  (Br. at 9-10.)  The holdings from these
criminal cases stand for the unremarkable and irrelevant proposition that if an
individual fails to file a tax return on April 15 and taxes are due and owing to the
United States, no administrative determination is necessary before the government
may go forward with its criminal prosecution because the individual's tax liability

---

[19]  SC Note principally relied on the following two cases in support of its argument that this case
is ripe for adjudication:  Nathel v. Siegal, 592 F. Supp. 2d 452 (S.D.N.Y. 2008) and Stern & Co.
v. State Loan & Fin. Corp., 205 F. Supp. 702 (D. Del. 1962).  The District Court examined both
of these cases and explained why neither was persuasive.  (SPA 41-42.)

arises by operation of law on April 16.  (Id.)  These cases offer no support insofar as whether SC Note suffered a concrete, injury-in-fact under Article III based on its speculation that the IRS may someday in the future revoke the Trust's classification as a REMIC.

SC Note appears to rely on these criminal cases as a springboard for its radical conclusion that "[a]s with the imposition of tax liability, the loss of an entity's REMIC status occurs by operation of law."  (Br. at 10.)  SC Note does not cite a single case that supports this unprecedented conclusion because there are none.  To the contrary, the loss of an entity's REMIC status does not occur by operation of law.  As noted above, the IRS determines whether the Trust's status as a REMIC has been lost.  See supra, at 21.  Before that even could occur, the IRS must first conduct an audit of the Trust to determine whether the Trust cease[d] to be a REMIC during the taxable year, and even if the IRS made such a determination, disqualification as a REMIC is *not* automatic.  The Tax Code provides that *if "the Secretary determines that such cessation was inadvertent*," and if the entity agrees to make sure that "steps are taken so that such entity is once more a REMIC," the entity may be treated as a REMIC as "the Secretary determines to be appropriate."  26 U.S.C. § 860D(b)(2)(B)(ii)-(iv).

Additionally, SC Note has emphasized its lack of standing by resorting to a PSA provision for acts that, under the REMIC provisions of the Tax Code, "could .

. . endanger the status of [the Trust] as a REMIC." (Br. at 3.) This is precisely the kind of "conjectural or hypothetical" injury insufficient for federal court jurisdiction under Article III.[20] See Kendall, 561 F. 3d at 118. Regardless of any PSA language, to satisfy constitutional ripeness under Article III, SC Note must demonstrate that it has suffered a concrete, injury-in-fact. The decision in Kendall is instructive. There, this Court held that plaintiff's argument that the ERISA statute "does not require a showing of direct injury – is a clear misstatement of law," and that plaintiff "must allege some injury or deprivation of a right, even if that right is statutorily created." Id. at 119.

Likewise, here, SC Note does not explain how the PSA or IRS statutory provisions impose any concrete injury on it. Even if the Trust's REMIC status were theoretically endangered (which it is not), SC Note has not suffered a dime of loss. A series of future events would have to occur. SC Note completely sidesteps the Tax Code provisions giving the IRS discretion to allow corrective actions, 26 U.S.C. § 860D(b)(2)(B)(ii)-(iv), and for review by the United States Tax Court, 26 U.S.C. § 6213(a), before the Trust's REMIC status is lost and any tax is required to be paid by the Trust (much less affect the Certificateholders).

---

[20] SC Note's "could endanger" theory also improperly seeks an advisory opinion.

B.    SC Note Has Failed Its Burden of Showing Prudential Ripeness

Separate and independent of its failure to show an actual injury, SC Note has failed to satisfy its burden of showing prudential ripeness.  With respect to the "fitness prong," this case would "be better decided later" after a final determination by the IRS that the Trust did indeed lose its REMIC status.  See Am. Savings Bank, FSB, 347 F.3d at 439-40.  With respect to the "hardship prong," SC Note will suffer no hardship from waiting until an adverse determination by the IRS is made, if at all.  See id. at 440.  ***To the contrary, all of the Certificateholders and SC Note will continue to benefit from the Trust's REMIC status.***

Indeed, the relief sought by SC Note in this case – termination of the Trust's REMIC status – is truly unprecedented and would wreak havoc and uncertainty on the CMBS industry and the participants in that industry, including Certificateholders.  LNR is the largest Special Servicer in the CMBS industry.  Its practice, which is shared by other special servicers, is to create single member LLCs for the purpose of foreclosing on the trust owned loans.  This practice has been the standard for years, and as discussed *infra*, does not jeopardize the REMIC status of trusts under federal tax law.

C.    SC Note's Reliance on the Dominion Case is Misplaced

The case or controversy requirement of Article III is not mentioned in Dominion Trust Co. Tenn. v. United States, 786 F. Supp. 1321 (M.D. Tenn. 1991).

Instead, Dominion involves the federal Declaratory Judgment Act, which as discussed *infra*, serves as an alternative bar to SC Note's REMIC-based claims. Further, Dominion in fact confirms the prematurity of SC Note's hypothetical claims. The dispute in Dominion was not whether taxes were owed, but rather who would have been required to pay the taxes:

> Dominion's motion does not require the Court to declare whether a capital gains tax is due; that matter is not disputed. Nor does Dominion ask the Court to address the amount of taxes due, or seek to prevent the IRS from assessing or collecting taxes. The sole issue raised by Dominion's motion is whether the tax should be paid out of the trust assets, or by defendant Hardison. As such, Dominion's motion does not run afoul of the Declaratory Judgment Act.

Id. at 1324.

By contrast, here, the threshold issue is not one of allocation, but one of determination – namely, whether the Trust's status as a REMIC has been lost, and if so, whether any taxes are owed. As the District Court noted, the IRS has not determined that the Trust's status as a REMIC has been lost or that the Trust may no longer be classified as a REMIC, and thus no taxes have been imposed on the Trust. See Jolles Foundation, Inc. v. Moysey, 250 F.2d 166, 169 (2d Cir. 1957) (concluding that there is no actual controversy because "[n]o tax has been assessed against the Foundation or even threatened"). The court in Dominion makes clear that it would have refused to declare whether taxes were due because such determination falls in the first instance within the original ambit of the IRS.

Dominion thus supports the District Court's dismissal of SC Note's REMIC-based claims.

## V.    Dismissal Of SC Note's REMIC-Based Claims Is Supported By Several Alternative Grounds In The Record

### A.    SC Note Lacks Standing to Sue Under the PSA

The no-action clause of the PSA – Section 11.03 – bars SC Note from bringing its REMIC-based claims.  The District Court analyzed whether Section 11.03 barred only Count XV.  (SPA 45-47.)  However, Section 11.03 applies with equal force to Counts I-XIV and dictates the same result.

Section 11.03 titled "Limitation on Rights of Certificateholders" provides in pertinent part:

> No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or with respect to this Agreement or any Mortgage Loan, unless, . . . such Holder previously shall have given to the Trustee and the Paying Agent a ***written notice of default*** hereunder, . . . and unless also (except in the case of a Default by the Trustee) ***the Holders of Certificates of any Class evidencing not less than 25% of the related Percentage Interests in such Class shall have made written request upon the Trustee*** to institute such action, suit or proceeding in its own name as Trustee hereunder and ***shall have offered to the Trustee such reasonable indemnity*** as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee, for 60 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding . . . ***no one or more Holders of Certificates shall have any right in any manner whatsoever by virtue of any provision of this Agreement to affect, disturb or prejudice the rights of the Holders of any other such Holder***, . . . .

(PSA § 11.03(c) (A 88) (emphasis added).)  SC Note has not and cannot satisfy all three of the requirements of Section 11.03(c); therefore, this serves as an absolute bar to all of its claims.

The courts in this Circuit have repeatedly recognized the importance of enforcing no-action clauses, particularly in a trust structure like this one:  "If in a mortgage securing thousands of bonds every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable."  Friedman v. Chesapeake & Ohio Ry. Co., 261 F. Supp. 728, 731 n.7 (S.D.N.Y. 1966), aff'd 395 F.2d 663, 663 (2d Cir. 1968).  Other courts applying New York law have enforced no-action provisions in debenture agreements for this important policy reason.  See Bank of N.Y. v. Battery Park City Auth., 251 A.D.2d 211, 211, 675 N.Y.S.2d 860, 860 (N.Y. App. Div. 1998) (affirming order granting motion to dismiss complaint based on no-action clause in bond resolution); In re Innkeepers USA Trust, 448 B.R. 131, 144 (Bankr. S.D.N.Y. 2011) (holding plaintiff lacked standing as it was "contractually bound by the 'no action' clause of the C-6 Servicing Agreement"); Victor v. Riklis, No. 91 Civ. 2897, 1992 WL 122911, at *6 (S.D.N.Y. May 15, 1992) (granting motion to dismiss complaint of individual debenture holder based on "no action" clause in indenture).

Pursuant to PSA § 11.03(c), SC Note lacks standing to bring suit unless, among other things, it represents at least 25% in interest of a Class of Certificateholders (the "25% requirement").[21]  Minimum percentage requirements for standing serve important purposes for investment trusts: they "***prevent individual holders of notes from bringing unworthy or unpopular actions (i.e., actions which are not . . .  supported by a majority of the noteholders)*** against the issuer or the trust, and to ensure that all rights and remedies under the trust indenture are shared equally by all noteholders."  RBC Capital Mkt., LLC v. Educ. Loan Trust IV, C.A. No. 6297–CS., 2011 WL 6152282, at **2, 5 (Del. Ch. Sept. 9, 2011) (explaining the purpose of no-action clauses as recognized by courts under New York law and learned commentators).[22]

SC Note's claims were properly dismissed because SC Note does not represent at least 25% of a Class of Certificates.[23]  See TIAA, et al. v. CMSLP, et al., 763 F. Supp. 2d 665, 670 (S.D.N.Y. 2011), aff'd, 481 Fed. Appx. 686 (2d Cir. 2012) (holding certificateholders' suit was barred by no-action provision of PSA where certificateholders did not satisfy 25% requirement); Accord Alleco, Inc. v.

---

[21]  Reading the three requirements of Section 11.03(c) separately is consistent with the language of the clauses and the PSA's severability clause.  (See A 90, PSA § 11.06.)

[22]  See also American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions*, §5-7 at 232 (1971) (explaining that the major purpose of a no-action clause is "to deter individual debentureholders from bringing independent lawsuits for unworthy or unjustifiable reasons"); Meyer v. Lowry & Co., 19 N.Y.S.2d 835, 836 (N.Y. Sup. Ct. 1940) (explaining that they are designed to "***prevent trumped-up and capricious suits***") (emphasis added).

[23]  SC Note's Complaint does ***not*** (and ***cannot*** consistent with Rule 11) allege that it represents at least 25% of interest of a Class of Certificateholders.

IBJ Schroder Bank & Trust Co., 745 F. Supp. 1467, 1476 (D. Minn. 1990) (holding in relevant part debenture holder's class claim would be dismissed where plaintiff held only 19% of principal and no-action clause required 25% minimum).[24]

**Additionally, SC Note has conceded that this lawsuit is a purchased grievance.** SC Note does not have the support of a single other Certificateholder. Indeed, no other Certificateholder would ever support SC Note's position because it is not in their collective economic best interests for the Trust's REMIC tax classification to be revoked. If SC Note's claims were upheld they would adversely affect, disturb, and prejudice the value of investments made by every real Certificateholder in the Trust, making enforcement of the PSA's 25% threshold standing requirement of even greater importance here. This Court should affirm the dismissal of SC Note's Complaint based on SC Note's failure to satisfy the 25% requirement.

B.    SC Note May *Not* Demand that the Court Declare Federal Tax Liabilities

Even if SC Note had standing – which it does not – it may not demand that the Court make declarations on the potential federal taxes of the Trust. The

---

[24]    See A 118-29, Order in Bank of Am., N.A. v. PCV St. Owner LP, Case No. 10-1178 (S.D.N.Y.) (refusing to allow certificateholders to intervene because they failed to satisfy the 25% requirement); RBC Capital Mkt., 2011 WL 6152282 at *7 (dismissing bondholder claims against Trust because holder did not comply with no-action clause).

Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986[25]. . . any court of the United States . . . may declare the rights . . . of any interested party. . . ." 28 U.S.C. § 2201(a) (emphasis added).[26]

The Supreme Court has explained that this exception shows that "[t]he congressional antipathy for premature interference with the assessment or collection of any federal tax also extends to declaratory judgments." Bob Jones Univ. v. Simon, 416 U.S. 725, 732 n.7 (1974). Courts have held that a "controversy is 'with respect to' federal taxes if it calls into 'question a specific provision of the Internal Revenue Code, or [] a ruling or regulation issued under the Code.'" Stephenson v. Brady, 927 F.2d 596 (Table), 1991 WL 22835, at *4 (4th Cir. Feb. 26, 1991) (quoting McCarthy v. Marshall, 723 F.2d 1034, 1037 (1st Cir. 1983)).

Here, SC Note's REMIC-based claims cannot possibly be decided without the District Court making declarations on the Trust's federal tax status.[27] SC Note's Complaint clearly calls into question rulings and regulations of the IRS.

---

[25] Section 7248 concerns nonprofit charitable institutions and is inapplicable. See 26 U.S.C. § 7248.

[26] SC Note's Complaint pleads federal tax questions in federal court; therefore, the federal Declaratory Judgment Act applies. See Phoenix Home Life Mutual Ins. Co. v. Brown, No. 93-CV-0990E(H), 1997 WL 627637, at *4 n.8 (W.D.N.Y. Oct. 7, 1997).

[27] Count XIV of SC Note's Complaint in fact expressly seeks such a declaration. (A 38-39.)

*First*, SC Note's REMIC-based claims call into question the IRS's position on the Trust's status as a REMIC, (A 115), which remains unchanged and unchallenged by the IRS.  See Jolles, 250 F.2d at 169 (holding that the federal Declaratory Judgment Act prevented the court from declaring that appellant, a foundation, should have a tax-exempt status at the time and in the future).  ***Second***, SC Note's legal theory also calls into question 26 CFR § 301.7701, an IRS regulation which provides that LLCs with a single owner, like the SPEs created by LNR, are disregarded for federal tax purposes.  Because these questions are at issue, SC Note's claims are "with respect to federal taxes" and therefore the District Court lacks authority under the Declaratory Judgment Act.

Indeed, SC Note concedes as much by contending that based on principles of collateral estoppel and res judicata, the IRS (without being presented with the issue in the first instance) would be bound by the District Court's analysis of the REMIC provisions vis-à-vis the Trust and its assessment of tax obligations.[28]  (Br. at 13.) This is totally improper.  See Wahpeton Professional Services, P.C. v. Kniskern,

---

[28]  SC Note asserts:  "Any error in the District Court's analysis of the REMIC provisions could (and likely would) be appealed to this very Court.  If, as the District Court proffers, the IRS were to disagree with the court's decision and find that no tax liability is owed, that would indeed be extraordinary, but not because the District Court made its initial determination.  It would be extraordinary because the IRS would be disregarding binding decisional law."  (Br. at 13.)  This assertion is just further evidence of SC Note's improper motive in buying this lawsuit. Additionally, in light of the fact that the practice of creating single member LLCs for purposes of foreclosing on trust owned loans is standard in the CMBS industry, it is even more critical that the IRS make the determination in the first instance given the sweeping impact such a ruling will have on the industry as a whole.

275 F. Supp. 806, 808 (D. N.D. 1967) (explaining that a determination of the legal status of the plaintiffs as trusts under the Tax Code is an improper attempt to obtain an advance determination of the tax status of the plaintiffs, before the IRS has weighed in, and concluding that the court lacks authority to do so).  Even were the court to find in favor of SC Note, this too would interfere with the IRS's ability to make its own findings on the Trust's tax status.  The Court should affirm the dismissal of SC Note's action on this alternative ground.[29]

### C.    SC Note's REMIC-Based Claims Fail as a Matter of Law

Even if the Court were to reach SC Note's substantive claims, they all lack merit as a matter of law.  In the Complaint, SC Note alleges that the SPEs, including the JPMCC SPE, are single member LLCs.  (A 20-21, Compl. ¶¶ 18, 22.)[30]  SC Note's REMIC-based claims rest on the theory that by creating single member SPEs and assigning to them documents pertaining to the loans owned by the Trust to facilitate the realization of the Trust controlled loans, LNR improperly caused the Trust to obtain membership interest in the SPEs.  (A 20-22, Compl. ¶¶ 16-24.)  SC Note alleges that the Tax Code does not permit a REMIC to own an

---

[29]  Courts may **not** issue declarations with respect to these types of issues, even in civil actions between private parties.  See Chirik v. T.D. Banknorth, N.A., Civil Action No. 06-04866, 2008 WL 186213, at *6 (E.D. Pa. Jan. 15, 2008) (holding plaintiff's request "directly calls into question specific provisions of the IRC [Internal Revenue Code]"); Daines, 105 F. Supp. 2d at 1161 ("To decide the dispute, the court would be forced to decide whether [plaintiff] bore the tax liability . . . which would impermissibly infringe upon IRS and federal tax courts' discretion to make such determinations.").

[30]  The JPMCC Operating Agreement identifies the Trust as the sole member of JPMCC SPE. (A 450.)

interest in an SPE because it is not a "qualified mortgage" or a "permitted investment," and therefore the Trust lost its federal tax classification as a REMIC. As a matter of federal tax law, this is an erroneous interpretation of the Tax Code.

REMICs are governed by Sections 860A through 860G of the Tax Code. Whether a REMIC exists is determined solely under federal tax law. The mere fact that LNR assigned a mortgage loan to an SPE does not mean that the Trust would be treated as having obtained an ownership interest in the SPE for federal tax purposes. The Treasury Regulations promulgated under Section 7701 of the Tax Code clearly establish that the separate existence of LLCs with a single owner, like the SPEs created by LNR, is disregarded for federal tax purposes. First, 26 CFR § 301.7701-1(a) provides as follows:

> *Organizations for federal tax purposes*—(1) *In general*. The Internal Revenue Code prescribes the classification of various organizations for federal tax purposes. ***Whether an organization is an entity separate from its owners for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local law.***

26 CFR § 301.7701-1(a) (first italics in original; emphasis added). Second, the regulations provide that single owner entities can choose to be recognized or disregarded as follows:

> § 301.7701–1(a)(4) *Single owner organizations*. Under §§ 301.7701–2 and 301.7701–3, certain organizations that have a single owner can choose to be recognized or disregarded as entities separate from their owners.

6892005

38

The regulations provide further detail: "A business entity with only one owner is classified as a corporation or is disregarded; if the entity is disregarded, its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner." (26 CFR § 301.7701–2 Business entities; definitions).[31]

Most importantly, 26 C.F.R. 301.7701-3(a) provides as follows:

> (a)   *In general*.   A business entity that is not classified as a corporation under 301.7701-2(b)(1), (3), (4), (5), (6), (7), or (8) (an eligible entity) can elect its classification for federal tax purposes as provided in this section.   An eligible entity with at least two members can elect to be classified as either an association . .  or a partnership, and an eligible entity with a single owner can elect to be classified as an association or to be ***disregarded as an entity separate from its owner***.

Id. (emphasis added).  Finally, the default rules provide that such entities will be

***"[d]isregarded as an entity separate from its owner if it has a single owner"*** for federal tax purposes.  Id. (emphasis added).  These Regulations clearly establish that the separate existence of LLCs with a single owner is disregarded for federal income tax purposes.[32]

---

[31]   See also 26 CFR § 301.7701–2(c)(2) *Wholly owned entities* (stating that "a business entity that has a single owner and is not a corporation under paragraph (b) of this section is disregarded as an entity separate from its owner").

[32]   Any argument by SC Note that Section 856(i)(1) of the Tax Code undercuts Defendants' interpretation of the Tax Code is wrong as a matter of law.  This section was enacted as part of the Tax Reform Act of 1986 (Pub. L. No. 99-514, § 662(a)) effective for taxable years beginning after December 31, 1986.  This provision, therefore, ***predates*** the effective date of the check-the-box regulations by 10 years.  Additionally, any argument by SC Note that the Treasury Regulations dealing with foreclosure property, as defined in Section 856(e), expressly permit REO property to be held by a wholly owned SPE, but do not extend such treatment to the ownership of a mortgage loan, misses the point.  A mortgage loan(s) held by an SPE is not "foreclosure property" but is a "qualified mortgage" to the extent that the Trust is the beneficial

In addition to the Regulations, the IRS has ruled in numerous circumstances that a disregarded entity is ignored and the assets and liabilities of the entity (the SPEs) are attributed to the owner (the Trust).  <u>See</u> Rev. Rul. 99-5 (Feb. 8, 1999) (the IRS concluded that the sale of a 50% membership interest in single-member LLC disregarded for federal tax purposes should be treated as the sale of a 50% ownership interest in each of the LLC's assets, which are treated as held directly by the seller for federal tax purposes); Rev. Rul. 2013-14 (June 6, 2013) (IRS held that property held indirectly by A through a disregarded LLC was treated as held directly by A for US income tax purposes); <u>see also</u> I.R.S. P.L.R. 200102037 (Jan. 16, 2001); I.R.S. P.L.R. 200035031 (Sept. 5, 2000); I.R.S. P.L.R. 9807013 (Feb. 13, 1998); Rev. Rul. 2004-77 (Aug. 2, 2004).[33]

Further, the PSA contemplates that real property, like the Shore Club Hotel, that the Trust forecloses upon (thus becoming real estate owned ("**REO**") property) may properly be held in the name of the Trustee ***or its nominee for the benefit of the Certificateholders***.  (<u>See</u> A 65, PSA Definition of REO Property at

---

owner of the note.  If such note is foreclosed upon, the "foreclosure property" rules then become relevant.

[33]  In briefing before the District Court on the Motion to Dismiss, SC Note relied on a ***gift tax*** case, <u>Pierre v. Comm'r</u>, 133 T.C. 24 (2009), for its argument that Defendants' position that such mortgage loans are indeed treated as assets of the REMIC "is inconsistent with the ***plain text*** of the ***relevant*** federal tax law."  However, the rationale of <u>Pierre</u>, which looked to New York state law, has no applicability to the treatment of a REMIC under federal tax law.  <u>Pierre</u> is limited to federal gift tax.

89[34]; A 79, PSA § 3.16(a).)  SC Note concedes that this is precisely what LNR did. (A 20-21, Compl. ¶¶ 18, 22.)

In sum, the dismissal of SC Note's claims was proper because the assignments by LNR to the SPEs had no effect on the tax status of the Trust as a REMIC.  Using a single owner SPE, like the JPMCC SPE created by LNR, to hold a mortgage loan has no effect as a matter of federal tax law on the tax status of the Trust.  The Trust in which SC Note owns a Class A-M Certificate continues as a REMIC and owns only "permitted investments" and "qualified mortgages" as those terms are defined by the Tax Code.

## VI. Dismissal Of SC Note's Five Counts Against Wells Fargo As Trustee Was Proper For Additional Reasons

All of SC Note's claims against Wells Fargo were also properly dismissed because they are **not** based on any conduct by Wells Fargo, but rather on alleged conduct by LNR, the Special Servicer.  (A 18-27, Compl. ¶¶ 5-47.)  None of the five counts brought against Wells Fargo alleges **any** particular conduct by Wells Fargo.[35]  This is plainly insufficient to plead a plausible claim against Wells Fargo. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (holding "conclusory nature" of

---

[34]  "A Mortgaged Property acquired by the Special Servicer on behalf of, and in the name of, the Trustee or *a nominee thereof for the benefit of the Certificateholders*." (emphasis added).

[35]  Count V seeks to hold Wells Fargo liable for alleged conduct by LNR regarding the Shore Club Loan.  (A 31-32.)  Count XI alleges that Wells Fargo is "liable for the acts of its agent, LNR."  (A 35.)  Count XII seeks to hold Wells Fargo liable for "the acts of its agent," LNR, relating to the transfer of the SPEs.  (A 36-37.)  Count XIII seeks to hold Wells Fargo liable for LNR's alleged "improper actions with respect to the SPEs."  (A 38.)  Count XIV is based on LNR's actions that allegedly will cause the Trust to lose its REMIC status.  (A 38-39.)

allegations against superior for acts of subordinates "disentitles them to the presumption of truth").

Absent any conduct by Wells Fargo, SC Note seeks to hold Wells Fargo vicariously liable for the alleged acts of LNR. However, the PSA expressly states that the Trustee may ***not*** be held liable for any acts of the Special Servicer: (i) "***Neither the Trustee nor the Paying Agent shall be responsible for any act or omission of the Master Servicer or the Special Servicer*** . . . ." (A 87, PSA § 8.02(viii)); and (ii) "the Trustee shall not be held liable for any negligence with respect to, or misuse of, any such power of attorney by the Master Servicer or Special Servicer." (A 68-69, PSA § 3.01(b).) <u>See</u> <u>In re Sidney B. and Frances K. Golub</u>, No. 620 IV, 2006 WL 2947677, at *3 (Pa. Comm. Pl. Sept. 24, 2006) (trust agreement immunized trustee from liability for actions through a power of attorney).

Further, Counts XI and XII specifically rely on a theory that LNR was acting as an "agent" of Wells Fargo. (A 35-36, Compl. ¶¶ 119, 124-25.) But the PSA expressly states that the Special Servicer (LNR) is ***not*** an agent of the Trustee (Wells Fargo): "[t]he relationship of each of the Master Servicer and the Special Servicer to the Trustee under this Agreement is intended by the parties to be that of an ***independent contractor*** and ***not that of a joint venture, partner or agent***." (A 69, PSA §3.01 (d).) (emphasis added). "Ordinarily, a principal is not liable for the

acts of independent contractors in that, unlike the master-servant relationship, principals cannot control the manner in which the independent contractors' work is performed." Burke v. Quick Lift, Inc., No. 05-CV-3731, 2008 WL 1744532, at *5 (E.D.N.Y. April 11, 2008). SC Note does not, and *cannot*, allege facts to satisfy any of the limited exceptions whereby a principal can be held liable for acts of its independent contractor. Therefore, the dismissal of Counts V, XI-XIV against Wells Fargo should be affirmed on these additional grounds.

## CONCLUSION

For the reasons stated above, this Court should affirm the dismissal order of the District Court.

Date: August 19, 2013

> Wells Fargo Bank, N.A., Midland Loan Services, a division of PNC Bank, National Association, and LNR Partners, LLC,
>
> By their attorneys,
>
> __/s/ Gregory A. Cross_____
> Gregory A. Cross
> Colleen M. Mallon
> **VENABLE LLP**
> 750 E. Pratt Street, Suite 900
> Baltimore, MD 21202
> (410) 244-7400
> Email: gacross@venable.com
>         cmmallon@venable.com

6892005

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 11,424 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman.


Dated:          August 19, 2013
                Baltimore, Maryland

                            VENABLE LLP


                            __/s/ Gregory A. Cross_____
                            Gregory A. Cross
                            Colleen M. Mallon
                            750 E. Pratt Street, Suite 900
                            Baltimore, MD  21202
                            phone: (410) 244-7400
                            fax: (410) 244-7742